# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Darryl Maurice Robinson,

        Plaintiff,

v.

City of Minneapolis, *et al.*,

        Defendants.

Civ. No. 10-3067 (RHK/JJK)
**MEMORANDUM OPINION AND ORDER**

Craig A. Buske, David L. Shulman, Law Office of David L. Shulman PLLC, Minneapolis, Minnesota, Theodore D. Dooley, Ted Dooley Law Office, LLC, St. Paul, Minnesota, for Plaintiff.

Timothy S. Skarda, Kristin R. Sarff, Minneapolis City Attorney's Office, Minneapolis, Minnesota, for Defendants.

## INTRODUCTION

This case arises out of Plaintiff Darryl Maurice Robinson's 2008 arrest by two Minneapolis police officers, Defendants Mark Lanasa and James Archer. Robinson asserts claims under the Fourth Amendment to the United States Constitution, alleging that the officers lacked probable cause to arrest him and subjected him to excessive force. Presently before the Court is the officers' Motion for Summary Judgment. For the reasons that follow, their Motion will be granted in part and denied in part.

## BACKGROUND

Viewed in the light most favorable to Robinson,[1] the record reveals the following facts. Robinson is Vice President of an entity known as Communities United Against Police Brutality, a group "devoted to combating and raising public awareness of police brutality." (Robinson Decl. ¶ 2.) In that capacity, from time to time he performs "cop watch," which involves "monitor[ing] an area where there have been prior reports of police harassment of civilians to document police misconduct." (Id.)

On July 20, 2008, Robinson and a friend were conducting "cop watch" near a homeless shelter in downtown Minneapolis. (Id.) At around 10:25 p.m., Lanasa and Archer drove into the area in a mobile booking van. (Lanasa Aff. ¶¶ 4-5.) At the time, Robinson was "sitting on a concrete barrier" that was "next to the public sidewalk," holding a video camera in one hand while speaking on his cell phone. (Robinson Decl. ¶¶ 4-5.) He was not obstructing the sidewalk and was not "hanging out with[] or next to any other people." (Id. ¶ 4.)

Lanasa called out to Robinson that he had to move, and Robinson responded that he was doing "cop watch." (Id. ¶ 5.) Lanasa then yelled "Come here!", and Robinson "complied and walked toward the police van." (Id. ¶ 6.) As he did so, Lanasa exited the van, knocked the cell phone and video camera out of Robinson's hands, and told him to turn around; Lanasa then handcuffed him. (Id. ¶ 7.) According to Robinson, "both officers [then] started to beat me up. Archer punched me, and Lanasa put me in a chokehold and took me to the ground." (Id. ¶ 8.) He could not breathe and briefly went

---

[1] Suffice it to say, the officers paint a very different picture of their encounter with Robinson.

unconscious. (Id.) When he "came to," the officers were "punching and kneeing" him while he was lying on the ground. (Id.) The officers told Robinson to stand up, but he was unable to do so. (Id. ¶ 9.) Lanasa then picked him up in a chokehold and walked him to the van where, without warning, the officers pushed him in from behind, "causing [him] to fall and strike [his] face against the floor." (Id.) He was transported to the Hennepin County Jail and booked for obstructing a sidewalk, obstructing legal process, and failing to obey a police order. (Id. ¶¶ 10, 12.) All charges were later dismissed.

As a result of the officers' (alleged) conduct, Robinson claims he suffered "bruising and swelling above [his] left eye," on his forehead, and on other (unspecified) parts of his body. (Id. ¶ 11.) He also alleges that he sustained marks on his neck from being choked and marks on his wrists from the handcuffs, and that he "had trouble breathing freely for several weeks after the incident." (Id.) He points to no long-term or ongoing medical problems, however, and records from the University of Minnesota Medical Center, where he sought treatment after being released from jail, indicate that he suffered "no substantial injuries other than contusions." (Doc. No. 45, Ex. B.)

Robinson commenced this action in July 2010. His Complaint asserted a litany of state and federal claims against Lanasa, Archer, the City of Minneapolis, Hennepin County, and several "John Doe" Hennepin County Sherriff's Deputies. Of particular relevance here, his three federal claims alleged that (1) Lanasa used excessive force during the arrest (Count VIII), (2) Archer failed to prevent Lanasa's use of excessive force (Count IX), and (3) both officers arrested Robinson without probable cause (Count X), all in violation of the Fourth Amendment.

The parties undertook discovery, and Robinson eventually dropped his claims against Hennepin County and the "John Doe" deputies, but pressed forward against Lanasa, Archer, and the City. Because these remaining Defendants did not move for summary judgment before the dispositive-motion deadline, the Court set the case for trial. In their trial submissions, however, the remaining Defendants asserted that even under Robinson's version of events, they were entitled to judgment as a matter of law. To prevent a waste of time and resources, therefore, the Court granted them leave to file an untimely summary-judgment motion. (See Doc. No. 59.) Robinson later stipulated to dismiss the City and further agreed to drop all of his state-law claims against Lanasa and Archer. The officers (hereafter, "Defendants") now seek summary judgment on Robinson's remaining claims (Counts VIII through X). Their Motion has been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing that the material facts in the case are undisputed. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*); Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Beard v. Banks, 548 U.S. 521, 529-30 (2006); Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th

Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

### I. Qualified immunity generally

Defendants argue they are entitled to qualified immunity on Robinson's claims. "Qualified immunity shields government officials from liability . . . unless the official's conduct violates a clearly established constitutional . . . right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). Determining whether a police officer is entitled to immunity, therefore, requires the Court to answer two questions: Do the facts alleged, when viewed in the light most favorable to the plaintiff, show the challenged conduct violated a constitutional right? If so, was that right clearly established on the date in question? Id. The Court has discretion to decide which of these two questions to answer first. Id.

Bearing these questions in mind, the Court analyzes each of Robinson's claims in turn below.

### II. Excessive force (Counts VIII-IX)

There is no dispute that on July 20, 2008, the date of Robinson's arrest, it was clearly established that police officers could not employ excessive force against an arrestee. See, e.g., Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005). But as the Eighth Circuit noted in Chambers v. Pennycook, 641 F.3d 898 (8th Cir. 2011), "over the

course of more than fifteen years, . . . it . . . remain[ed] an open question in this circuit whether an excessive force claim requires some minimum level of *injury*." Id. at 904 (emphasis added). Different panels of the Eighth Circuit had reached different answers to that question since the 1990s. Compare, e.g., Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) (Kyle, J., sitting by designation) (concluding that a plaintiff could state an excessive-force claim as long as he suffered *some* injury, no matter how minor), and Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995) (same), with Andrews, 417 F.3d at 818 (noting that a "*de minimis* . . . injury is insufficient to support a finding of a constitutional violation"), and Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) (same).

Chambers put an end to this uncertainty, holding that the excessive-force inquiry must focus on the force applied and *not* its end result, that is, the level of injury. 641 F.3d at 906 ("[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury*, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question.") (emphases in original). "The rule should focus instead on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." Id. (emphasis in original). Hence, there no longer exists any "requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." Id. at 907.

But as Chambers noted, the Eighth Circuit's inconsistent decisions had left it unclear for more than a decade whether "an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury." Id. at 908. "Given the state of the

law," a reasonable police officer making an arrest before <u>Chambers</u> "could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." <u>Id.</u> Stated differently, it was not clearly established pre-<u>Chambers</u> that an officer violated an arrestee's rights, no matter how much force he applied, if he caused only *de minimis* injuries. <u>Id.</u> at 908–09. As a result, the Eighth Circuit determined that the officers in <u>Chambers</u>, who used an unreasonable amount of force resulting only in *de minimis* injuries, were entitled to qualified immunity because at the time of the plaintiff's arrest (August 2005) it was "reasonable for the officers to believe that they remained within constitutional bounds if that was the result" of their conduct. <u>Id.</u>

Seizing upon <u>Chambers</u>, Defendants argue they are entitled to qualified immunity on the excessive-force claims here because Robinson suffered at most *de minimis* injuries. Robinson responds that <u>Chambers</u> is inapplicable and would not defeat his claims in any event. In the Court's view, Defendants have the better argument.

Robinson contends that <u>Chambers</u> shields police officers from liability for excessive force only when there exists a basis to make an arrest, which according to Robinson was not the case here. (Mem. in Opp'n at 8.) He argues that without a valid arrest or any other justification for the use of force, it is "*a fortiori* unreasonable" to use any force at all. (Mem. in Opp'n at 16.) In support, he points to the recent decision in <u>Smith v. Appledorn</u>, Civ. No. 11-2966, 2013 WL 451320, at *4 (D. Minn. Feb. 6, 2013) (Ericksen, J.), which distinguished <u>Chambers</u> on the basis that "the extent of injury is only relevant if the propriety of physical coercion is established." <u>Id.</u> at *4-5.

- 7 -

But Robinson cannot so easily avoid <u>Chambers</u>. There, officers executing a search warrant allegedly kicked the plaintiff before placing him under arrest. 641 F.3d at 902. He was taken to a local police station and, from there, to the county jail. After he complained of back pain, two officers (Pennycook and Van Mierlo) agreed to transport him in a police car to a hospital for evaluation. "Van Mierlo drove while Chambers sat in the passenger seat, and Pennycook sat in the seat immediately behind Chambers. Chambers was handcuffed behind his back and his seatbelt was fastened." <u>Id.</u> The officers adjusted his seat "so that it was leaning as far forward as possible," with his head almost touching the dashboard, and then complained that the plaintiff was wasting their time by requiring a ride to the hospital. <u>Id.</u>

> According to Chambers, Van Mierlo began to drive erratically, accelerating and braking suddenly so that Chambers would be jerked back and forth in his seat. Chambers testified that Pennycook, meanwhile, forcefully kicked the back of his seat and used his arm to choke Chambers from behind, while complaining that Chambers was wasting their time. In Chambers's account, the trip lasted approximately twenty minutes because Van Mierlo chose to drive in circles rather than go straight to the hospital. Chambers also testified that after they arrived at St. Mary's, Van Mierlo and Pennycook roughly jerked him around by his handcuffs during the walk from the car to the building's front doors.
>
> Once Chambers arrived at the hospital, he was evaluated by Dr. Randall Speck. Chambers testified that he told Speck that he was suffering from back and neck pain, which was so severe that Chambers was crying and had difficulty concentrating. Chambers stated that Speck had told him that his back showed signs of redness and bruising.

<u>Id.</u> Despite these allegations, and despite concluding that the foregoing conduct "was not objectively reasonable," the Eighth Circuit determined that the officers were entitled to qualified immunity because the plaintiff suffered only *de minimis* injuries. <u>Id.</u> at 907-09.

- 8 -

These facts undermine Robinson's argument. The officers' conduct in Chambers occurred under circumstances in which, by Robinson's logic, no use of force would have been appropriate, as the plaintiff was already in custody and handcuffed, compliant with the officers' commands – simply put, the officers' use of force was "gratuitous." Id. at 908. Yet, the officers were entitled to qualified immunity because they caused only *de minimis* injuries. A careful review of Chambers, therefore, reveals that case did not turn on whether the force was employed during the course of a reasonable seizure, but rather hinged solely on *the end result* of the officers' force.[2] See also Bishop v. Glazier, No. 12-2661, slip op. at 6-8 (8th Cir. July 30, 2013) (affirming grant of qualified immunity on *de minimis* injury grounds even when no arrest was made); Andrews, 417 F.3d at 818 (summary judgment properly granted to sheriff who caused only *de minimis* injuries in circumstances where any use of force was allegedly inappropriate). The same logic must apply here. If Defendants caused Robinson only *de minimis* injuries, they are entitled to qualified immunity regardless of whether their use of force was justified *ab initio*.[3]

This leads to Robinson's second argument: even if Chambers applies, he suffered more than *de minimis* injuries and, hence, Defendants are not entitled to qualified

---

[2] For this reason, the undersigned respectfully disagrees with Appledorn.

[3] Robinson argues that endorsing such a result will give police officers "free license to rough up any suspect, regardless of the need to use force. That is hardly 'reasonable' and thus contrary to the Fourth Amendment's prohibition against 'unreasonable' seizures." (Mem. in Opp'n at 15.) But "roughing up" a suspect suggests causing far more than *de minimis* injury. And in any event, Robinson's concern is illusory. Chambers made clear, for conduct occurring after that case was decided, that the focus is on the *force used* and not its end result. 641 F.3d at 906. Hence, officers cannot "rough up" suspects with impunity going forward. A *de minimis* injury defense will shield officers from liability only for arrests occurring before June 6, 2011, the date Chambers was decided.

immunity. (Mem. in Opp'n at 16–17.) But the injuries Robinson suffered, basically consisting of contusions and swelling, fall squarely within the range held *de minimis* in this Circuit. See, e.g., Chambers, 641 F.3d at 906 (back contusions, redness and bruising were *de minimis*); Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006) ("relatively minor scrapes and bruises and [a] less-than-permanent aggravation of a prior shoulder condition" were *de minimis* injuries); Andrews, 417 F.3d at 815 (affirming dismissal of claims against officer whose "forceful blow" knocked plaintiff backward five or six feet and caused a sore neck, arm, and shoulder, a "horrible, horrible headache," and exacerbated pre-existing mental condition); Binio v. City of St. Paul, 788 F. Supp. 2d 935, 946 (D. Minn. 2011) (Schiltz, J.) (sore arm and bruises were *de minimis*).[4] Robinson also contends that he "had trouble breathing for several weeks after the incident" (Robinson Decl. ¶ 11), but he offers no evidence indicating that the problem is ongoing or that he sought medical treatment for it. This alleged injury also cannot support his claim. See, e.g., Wertish, 433 F.3d at 1067 (less-than-permanent aggravation of prior shoulder condition was *de minimis*); Crumley, 324 F.3d at 1008 (bleeding resulting from handcuffing would not support excessive-force claim because plaintiff did not "present any medical records indicating she suffered any long-term or permanent physical injury as a result"); McClennon v. Kipke, 821 F. Supp. 2d 1101, 1107 (D. Minn. 2011) (Kyle, J.) (allegations of shoulder pain and chest tightness insufficient absent

---

[4] To be sure, some cases pre-dating Robinson's arrest held that injuries similar to those suffered here were more than *de minimis*. See, e.g., Lambert, 187 F.3d at 936 (bruises and facial laceration). But this merely highlights that the law on excessive force was unclear at the time of Robinson's arrest in July 2008. See also Irving v. Domire, 519 F.3d 441, 448 (8th Cir. 2008) (noting that "[n]o clear line divides *de minimis* injuries from others").

medical documentation); Peterson v. Kopp, Civ. No. 11-2578, 2012 WL 4872668, at *5 (D. Minn. Oct. 15, 2012) (Kyle, J.) (fleeting difficulty breathing was *de minimis* injury).

The best Robinson can point to in an attempt to show more than *de minimis* injury is the fact that he briefly lost consciousness from Lanasa's headlock. But ultimately this, too, does not aid his cause. An apt comparison lies with the use of a Taser, a device that delivers "a painful and frightening blow [that] temporarily paralyzes the large muscles," rendering "even the most pain tolerant individuals utterly limp" and "helpless." McKenney v. Harrison, 635 F.3d 354, 362 (8th Cir. 2011) (Murphy, J., concurring). Yet, it has been recognized that Tasers do not inflict more than *de minimis* injury. See, e.g., LaCross, 713 F.3d at 1158; McClennon, 821 F. Supp. 2d at 1107-08 (gathering cases holding that Taser inflicts only *de minimis* injury).[5] Notably, the plaintiff in LaCross had argued to the District Court that a Taser caused him to pass out and this "loss of consciousness, by itself, is more than a *de minimis* injury," but that argument was rejected and, at least implicitly, that conclusion was affirmed on appeal. LaCross v. City of Duluth, Civ. No. 10-3922, 2012 WL 1694611, at *12 (D. Minn. May 14, 2012) (Ericksen, J.). The Court perceives no reason to reach a contrary result here.

Because Robinson's injuries were *de minimis*, and because it was not clearly established at the time of his arrest "that an officer violated the rights of an arrestee by

---

[5] Several decisions from this Court have held (or intimated) that a Taser causes something more than *de minimis* injury. See, e.g., Newton v. Walker, Civ. No. 11-1499, 2012 WL 4856163, at *3-4 (D. Minn. Oct. 12, 2012) (Schiltz, J.); Orsak v. Metro. Airports Comm'n Airport Police Dep't, 675 F. Supp. 2d 944, 958 (D. Minn. 2009) (Tunheim, J.). The undersigned does not believe those cases stand on firm footing in light of LaCross. See 713 F.3d at 1158 (rejecting argument "that application of [a] Taser caused more than *de minimis* injury").

applying force that caused only *de minimis* injury," Chambers, 641 F.3d at 908, Defendants are entitled to qualified immunity on the excessive-force claims.[6]

## III. Unlawful arrest (Count X)

Defendants next argue that they are entitled to qualified immunity on Robinson's unlawful-arrest claim. It was "well established" on the date in question "that a warrantless arrest without probable cause violate[d] an individual's constitutional rights under the Fourth and Fourteenth Amendments." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (quoting Hannah v. City of Overland, Mo., 795 F.2d 1385, 1389 (8th Cir. 1986)). Yet, qualified immunity shields police officers who make mistakes when effecting arrests, as long as those mistakes are reasonable. Id. As a result, "the governing standard for a Fourth Amendment unlawful arrest claim 'is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known

---

[6] One final point bears mentioning. In his Complaint, Robinson alleged that *Lanasa* used excessive force and that Archer was liable only for *failing to prevent* that force. (See Compl. ¶ 18 ("The defendant *Lanasa* approached Robinson . . ., grabbed him, handcuffed him, put him in a chokehold . . ., rode him to the ground, knocked him unconscious, [and] threw him into the back of the van.") (emphasis added); id. ¶ 48 (asserting the excessive-force claim against only Lanasa and the now-dismissed Hennepin County deputies); id. ¶ 51 ("The defendants Archer and [the Hennepin County deputies] . . . fail[ed] to intervene to prevent . . . Lanasa . . . from assaulting and injuring plaintiff.").) In his recently filed Declaration, however, Robinson has attempted to alter the nature of his claims, now asserting that both Lanasa *and* Archer physically accosted him. (Robinson Decl. ¶¶ 8-9.) The Court does not countenance Robinson's attempt to amend his claims through his Declaration. In any event, this newly altered claim against Archer fails for the same reason it fails against Lanasa: Robinson suffered only *de minimis* injuries. Similarly, Robinson's claim that Archer failed to intervene cannot survive, because it was not clearly established on the date of his arrest that causing *de minimis* injury violated the law. See, e.g., Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981) (claim for failure to intervene requires showing that defendant had reasonable notice constitutional violation was occurring); Brown v. City of Bloomington, 280 F. Supp. 2d 889, 894 (D. Minn. 2003) (Ericksen, J.) ("A claim . . . against an officer for failure to intervene necessarily assumes another officer violated the plaintiff's constitutional rights.").

that the arrest violated plaintiff's clearly established right[s].'" Id. (quoting Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)); accord, e.g., Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011) ("Officers may also be entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable.") (citation omitted).

To determine whether there existed "arguable probable cause" for an arrest, the question is whether "a reasonable officer could have believed [the arrest] to be lawful, in light of . . . the information the [arresting] officer[] possessed." Sang v. City of St. Paul, Civ. No. 09-455, 2010 WL 2346600, at *3 (D. Minn. June 8, 2010) (Kyle, J.) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Here, Defendants assert that arguable probable cause existed to arrest Robinson for any of four violations: obstructing the sidewalk (in violation of Minneapolis City Ordinances ("MCO") §§ 427.220, 466.240), failure to obey a police order (in violation of MCO § 466.130), disorderly conduct (in violation of MCO § 385.90), and trespass (in violation of Minn. Stat. § 609.605).[7] (Def. Mem. at 17-20.) The Court does not agree.

With regard to obstructing the sidewalk, there is no dispute that when the officers arrived, Robinson was sitting on a concrete construction barrier that was *adjacent* to the sidewalk. (Robinson Decl. ¶ 4 ("The concrete barrier was next to the public sidewalk."); Lanasa Aff. ¶ 6 (barrier "separated a demolition area for the Ramada hotel and the

---

[7] That Robinson was charged with only certain of these offenses is immaterial. As the Supreme Court held in Devenpeck v. Alford, 543 U.S. 146, 153 (2004), the probable-cause inquiry is not "confined to . . . the offense actually invoked at the time of arrest." Rather, the inquiry is an *objective* one, based upon the *facts* known to the officer at the time. If those facts support probable cause for *any* crime, the arrest is lawful. Id.

- 13 -

sidewalk").) It is difficult to conceive, therefore, how the officers could have even arguably concluded Robinson was *obstructing* the sidewalk. See MCO § 427.220 ("Three (3) or more persons shall not stand together or near each other in any street or *on any footwalk or sidewalk so as to obstruct the free passage for pedestrians*.") (emphases added); § 466.240 ("No person or group of persons shall assemble or cause others to assemble on any sidewalk *so as to obstruct the free passage of pedestrians* thereon or interfere with the use thereof.") (emphasis added). Defendants respond that Lanasa observed a group of people in close proximity to Robinson (Lanasa Aff. ¶ 6) and they attempt to lump Robinson into that group. But this argument is unavailing because Defendants nowhere suggest these *other* individuals were impeding the free flow of pedestrians or interfering with the sidewalk's use. Defendants do not aver (or suggest) that the group was disturbing the peace or otherwise engaged in inappropriate conduct. In fact, though the evidence does not reveal precisely where these other individuals were located, at least some, like Robinson, were not *on* the sidewalk, but rather were sitting on the concrete barrier. (Id. ¶¶ 6-7 ("I saw approximately ten people loitering at a construction barrier. . . . I asked [a] group of four to stop loitering and sitting on the construction barrier.").) Accepting these facts as true, the Court finds arguable probable cause for obstruction lacking.

Defendants next argue that Robinson was trespassing on the Ramada construction site because he was "straddling" the concrete construction barrier and, hence, was "encroaching on private property." (Def. Mem. at 19-20.) But Robinson asserts that he was only "sitting" on the barrier, not "straddling" it. (Robinson Decl. ¶ 4.) If true, it is

unclear why the officers could have concluded he was "encroaching on private property." Indeed, although not dispositive (see supra note 7), the Court finds it noteworthy that Robinson was never charged with trespassing, suggesting the officers did not believe he had committed that offense at the time of his arrest.

Finally, Defendants argue that Robinson ignored a police order and engaged in disorderly conduct by failing to comply with their command to leave the area. (Def. Mem. at 20.)[8]  But this presumes that an officer has given a lawful command in the first place, see, e.g., MCO § 466.130 ("No person shall willfully fail or refuse to comply with any *lawful* order or direction of a peace officer invested by law with authority to direct, control or regulate traffic.") (emphasis added), and the record does not ineluctably lead to the conclusion that the officers lawfully ordered Robinson to move. Accepting his version of events, he was neither trespassing nor obstructing the sidewalk, nor could a reasonable officer have concluded that he was committing those crimes. Similarly, there is no basis to conclude that his conduct was "disorderly." See MCO § 385.90 (criminalizing conduct "which disturbs the peace and quiet of another").

Viewing the evidence in the light most favorable to Robinson, the Court concludes that the officers are not entitled to qualified immunity on the unlawful-arrest claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 60) is

---

[8] Defendants initially argued that this (alleged) conduct also gave rise to probable cause for the crime of obstructing legal process, but they abandoned that argument in their Reply. (See Reply Mem. at 7-8.)

**GRANTED IN PART** and **DENIED IN PART.** The Motion is **GRANTED** with respect to Robinson's excessive-force claims (Counts VIII and IX), and those claims are **DISMISSED WITH PREJUDICE.** The Motion is **DENIED** with respect to Robinson's unlawful-arrest claim (Count X).

Date: July 30, 2013                   s/Richard H. Kyle
                                      RICHARD H. KYLE
                                      United States District Judge